UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CAROL JEAN O'NEAL,

                Plaintiff,

v.                                                    Case No.  5:07-cv-143-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 6), and both parties have filed briefs outlining their respective positions. (Docs. 11 & 12.)  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I. PROCEDURAL HISTORY

On August 14, 2002, Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of October 10, 2001. (R. 58-60, 358-60.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 33-36, 40-42, 44-45, 351-55, 368-71.)   Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ") (R. 40.) The ALJ conducted Plaintiff's administrative hearing on October 13, 2004. (R. 410-44.)  The ALJ

issued a decision unfavorable to Plaintiff on January 27, 2005 (R. 19-30.)  Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied.  (R. 5-11.)  Plaintiff then appealed to this Court.  (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. **SUMMARY OF THE RECORD EVIDENCE**

At the time of the hearing, Plaintiff was forty six (46) years old. (R. 416.) She has a tenth-grade education (R. 418) and has previous work experience as an auto parts delivery person, dispatcher, and house cleaner. (R. 75.) Plaintiff contends that she has been unable to work since October 10, 2001 due to leg and back pain, high blood pressure and depression. (R. 62, 85)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff has a back disorder, ankle pain, hypertension, and affective disorders. (R. 24.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.  (Id.)

The ALJ then found that Plaintiff retained the RFC to perform sedentary work with a sit/stand option. (R. 28-29.)  The ALJ limited Plaintiff to occasional climbing of stairs, balance, and stooping and found that she should never climb ladders, scaffolds or crouch, kneel or crawl and that she should avoid concentrated exposure to extreme cold. (Id.)  As for mental impairments, the ALJ found that Plaintiff has moderate limitations in her ability to understand and carry out detailed instructions; interact appropriately with the public, supervisors and co-workers; and respond appropriately to work pressures in the usual work setting and changes in the work setting.  (Id.)  After finding that Plaintiff could perform her past relevant work as a dispatcher, the ALJ concluded that Plaintiff was not disabled. (Id.)

The record evidence shows that Plaintiff has a history of back pain.  On April 2, 2002, Antonio DiScalfani, M.D., a neurosurgeon, performed a hemilaminectomy and microdiskectomy to correct a herniated disc at L4-5.  (R. 248-50, 260.)  In March 2003, Plaintiff began treatment with Bradley Ruben, D.O. for worsening back pain.  (R. 332-33.)  On April 12, 2004, Dr. Ruben completed a "Treating Physicians's Medical Assessment of Ability to Do Work-Related Activities."  (R. 318-22.)  This appeal focuses on the ALJ's rejection of Dr. Ruben's "Medical Assessment."

## IV. DISCUSSION

Plaintiff argues that the ALJ failed to provide good cause for his rejection of the opinion of Dr. Ruben.  In his April 12, 2004 "Medical Assessment", Dr. Ruben opined that Plaintiff could lift/carry less than 5 pounds; stand/walk 1-2 hours in an 8-hour

6

workday; sit 1-2 hours in an 8-hour workday; and never climb, balance, stoop, crouch, kneel, or crawl. (R. 318-22.) He further found limitations in handling and pushing/pulling and limitations in exposure to moving machinery, temperature extremes, chemicals, and humidity. (Id.) Dr. Ruben also noted that Plaintiff would require rest periods during the day, but did not specify how often they should occur or how long they should last. (Id.) Finally, Dr. Ruben noted that Plaintiff took Methadone for pain. (Id.)

In rejecting Dr. Ruben's opinion, the ALJ stated:

> The undersigned does not give great weight to this opinion as it is not supported by the bulk of the medical evidence of record as whole. In addition, the claimant reported that she presented to Dr. Ruben for pain management and had only been treated for two weeks and she was not sure if he would continue to treat her pain.

(R. 28.)

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[22] If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[23]

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[24]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[25]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[26]  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[27]

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court finds that the ALJ failed to properly consider the opinion of Dr. Ruben as a treating physician.  The ALJ did not articulate good cause for discounting Dr. Ruben's April 2004 assessment regarding Plaintiff's functional limitations.

---

[24] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[25] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[26] 20 C.F.R. § 404.1527(d).

[27] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

The records show that Dr. Ruben examined Plaintiff on at least four occasions prior to April 2004.  (R. 325-35.)  While Dr. Ruben's treatment notes do not reflect any specific functional limitations, Dr. Ruben noted that Plaintiff had "significant degenerative disease" (R. 333) and "bilateral sacroiliac dysfunction" (R. 327.)  Dr. Ruben administered two sacroiliac joint injections, prescribed pain medications and recommended "aggressive physical therapy and strengthening of the abdominals" absent which Dr. Ruben opined Plaintiff "will continue to deteriorate and ultimately may need some sort of fixating surgery."  (R. 325-35.)  On December 4, 2003, Dr. Ruben ordered an MRI of Plaintiff's lumbar spine which showed degenerative disc disease at L4-L5.  (R. 324.)  Additionally, Antonio DiScalfani, M.D., the neurologist who performed Plaintiff's 2002 back surgery, examined Plaintiff in January 2004 and reviewed the December 2003 MRI.  (R. 239.)  In a letter to Dr. Ruben dated January 28, 2004, Dr. DiScalfani noted that Plaintiff's MRI shows "high-grade degenerative disc disease at L4-5" and that on examination, "almost every movement of her legs or back causes pain." (Id.)  Dr. DiScalfani's impression was chronic mechanical low back pain. (Id.)  In sum, Dr. Ruben's April 2004 opinion regarding Plaintiff's functional limitations is supported by his diagnostic and clinical findings and those of Dr. DiScalfani.

In rejecting Dr. Ruben's April 2004 opinion, the ALJ also stated that Plaintiff "reported that she presented to Dr. Ruben for pain management and had only been treated for two weeks and she was not sure if he would continue to treat her pain."  (R. 28.) As an initial matter, the exhibit cited by the ALJ ("10E") does not appear to be in the record before the Court.  Moreover, Plaintiff began treatment with Dr. Ruben in March 2003 (R. 332-33) – more than one year before Dr. Ruben rendered his April 2004

opinion regarding Plaintiff's functional limitations. Accordingly, the ALJ's articulated reasons for discounting Dr. Ruben's opinion are not supported by substantial evidence.[28]

Because the ALJ failed to articulate specific reasons supported by substantial evidence for his decision to discount the opinions of Dr. Ruben, this matter is due to be remanded to the Commissioner for proper consideration of Dr. Ruben's opinions as a treating physician. On remand, the Commissioner should give substantial or considerable weight to Dr. Ruben's opinions or in the event the ALJ chooses to reject Dr. Ruben's opinions, the ALJ must articulate specific reasons based on substantial evidence for giving lesser weight to his opinions, in accordance with the law of the Eleventh Circuit.[29]

## V. **CONCLUSION**

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to properly consider the opinion of Dr. Ruben and conduct any additional proceedings the Commissioner deems appropriate.

---

[28] Plaintiff also argues that the ALJ improperly gave weight to the opinion of a non-examining reviewing physician. However, the ALJ does not expressly state that he is according weight to a non-examining reviewing physician nor does the ALJ's RFC finding mirror the opinion of any non-examining physician.

[29] Because the Court has determined that the ALJ erred by failing to accord appropriate weight to the opinions of Dr. Ruben, and as a result the ALJ on remand will be required to conduct a new RFC analysis, the Court need not address Plaintiff's argument that the ALJ failed to properly consider her subjective complaints of pain.

The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on June 13, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel